CROWN CORK & SEAL COMPANY,
INC., etc., Appellant,

v.

CITY OF LAKEVILLE, etc., Respondent.

Nos. 51327, 51578.

Supreme Court of Minnesota.

Dec. 11, 1981.

James R. Keating, Faribault, for appellant.

Grannis, Grannis, Campbell & Farrell and Roger N. Knutson, So. St. Paul, for respondent.

Stanley G. Peskar, League of Minnesota Cities, St. Paul, Holmes & Graven, David L. Graven and Larry M. Wertheim, Metropolitan Waste Control Commn., Minneapolis, for amicus curiae.

TODD, Justice.

Crown Cork & Seal Company, Inc. (Crown) purchased industrial property in Lakeville which it converted to a can manufacturing plant. The previous owners had connected to the municipal sewage and water facilities and paid assessments and connection charges for such hookups. Crown's operation required increased sewer and water capacities so they constructed larger service lines to be connected to the municipal facilities. Lakeville levied a connection charge of $147,415. Crown brought action for declaratory relief alleging that the charge was not authorized by statute or by city council resolutions, that the charge was unreasonable, arbitrary and capricious, and that the charge amounted to an assessment of property which had previously been assessed. Both parties moved for summary judgment and the trial court granted summary judgment in favor of Lakeville. Crown appealed. We affirm.

The essential facts of this litigation are not in dispute. In 1972, Crown purchased property in the Airlake Industrial Park in the City of Lakeville. At the time of the purchase, the property was improved with an industrial building used for the assembly of mobile homes, and was already serviced by city sewer and water. The city projects which brought sewer and water to the property had been fully assessed. In 1977, Crown installed a can manufacturing opera-

tion in the building which required more water and produced more sewage. To facilitate the increased flow, Crown installed a new 6-inch water line to supplement the 4-inch line already in place, and replaced the existing 4-inch sewer line with a 6-inch line. In April of 1978 the City contacted Crown requesting payment of approximately $590,000 for a "connection charge." The City subsequently allowed Crown time to reduce its water use and discharge, and after monitoring Crown's use and discharge during 1978 recalculated the connection charge to be $147,415.

The $147,415 charge is calculated by reference to water supplied and water discharged. $45,200 of the charge represents a "sewer availability charge" (SAC), levied upon the City by the Metropolitan Waste Control Commission (M.W.C.C.), which the City now wishes to pass on to Crown in the form of a connection charge. Under the M.W.C.C. formula, one SAC unit charge of $400 is imposed for every 274 gallons of daily sewage flow discharged by a facility within the City. Crown's estimated sewage flow is 31,055 gallons/day, or 113 SAC units (31,055 ÷ 274 = 113). The $400 M.W.C.C. unit charge multiplied by the 113 unit Crown discharged resulted in the $45,200 charge to the City of Lakeville. SAC charges are used by the M.W.C.C. to defray the cost of reserve sewer capacity for metropolitan sewage treatment plants and interceptors.

The remaining portion of the $147,415 charge to Crown constitutes the City's own connection charge. The formula for calculating the City's sewer and water connection charge is patterned after the M.W.C.C.'s formula for its SAC charge; one City sewer and water unit charge is imposed for every estimated 274 gallons of daily flow. Crown uses approximately 65,000 gallons of water each day, 31,055 of which are discharged into the City's sewer system. Crown was charged for 113 sewer units and 127.7 water units. Funds generated by city connection charges are deposited in the City's sewer and water fund, which is used to pay for completion of the core components of the City's sewer and water systems, including trunks, oversizing, wells, storage facilities, booster stations and force mains.

The City's "unit charges" are revised by the City Council from time to time to reflect current construction costs. Both the cost of completing the system and the number of future connections to the system have been estimated. The estimated cost to complete the Lakeville system and to pay the existing deficit in the City's sewer and water fund is approximately $10,000,000. Based upon the latest unit connection charges passed by the City in 1977, approximately 9,569 unit connections (one unit equaling 274 gallons of discharged sewage) will be needed in the next 20 years to pay for the system.

The issues presented are:

1. May a city pass on to a user SAC charges levied against the Municipality by M.W.C.C.?

2. May a city use a unit charge for establishing connection charges to its municipal sewer and water facilities?

3. Are there disputed factual issues which preclude the entry of summary judgment?

1. Minn.Stat. 444.075, subd. 3 grants to municipalities the authority to impose various sewer and water charges "[f]or the purpose of paying for the construction, reconstruction, repair, enlargement, improvement, or other obtainment and the maintenance, operation and use" of municial water and sewer facilities. The statute speaks of three types of sewer and water charges; the City has the authority to impose "just and equitable charges for the *use* and for the *availability* of such facilities and for *connections* therewith * * *." [emphasis added]. With regard to *use* charges, § 444.-075, subd. 3 provides:

Charges made for service directly rendered shall be as nearly as possible proportionate to the cost of furnishing the same, and sewer charges may be fixed on the basis of water consumed, or by reference to a reasonable classification of the

types of premises to which service is furnished, or by reference to the quantity, pollution qualities and difficulty of disposal of sewage produced, or on any other equitable basis including, but without limitation, any combination of those referred to above.

The statute provides that "minimum" charges for the *availability* of water and sewer facilities "may be imposed for all premises abutting on streets or other places where municipal * * * water mains or sewers are located, whether or not connected thereto." Finally, with regard to *connection charges*, § 444.075, subd. 3 provides:

"Charges for connection to the facilities may in the discretion of the governing body be fixed by reference to the portion of the cost thereof which has been paid by assessment of the premises to be connected, in comparison with other premises, as well as the cost of making or supervising the connection."

■ The focus of Crown's argument can best be understood by first identifying those issues which Crown *does not* raise. Crown does not question the City's discretionary authority to impose any combination of use, availability and connection charges to finance municipal sewer and water facilities. That authority is quite clearly granted in the very first sentence of § 444.075, subd. 3. Nor does Crown challenge the formula utilized by the M.W.C.C. in arriving at the M.W.C.C. sewer availability charge levied upon the City; that formula was upheld by this court in *City of Brooklyn Center v. Metropolitan Council,* 306 Minn. 309, 243 N.W.2d 102 (1975). Finally, Crown does not question the authority of the City to recoup from users of municipal sewer facilities M.W.C.C. sewer availability charges paid by the City. Minn. Stat. § 473.519 (1980) provides, in pertinent part:

Each local government unit shall adopt a system of charges for the use and availability of the metropolitan disposal system which will assure that each recipient of waste treatment services within or served by the unit will pay its proportionate

share of the current costs allocated to the unit by the commission [M.W.C.C.] under section 473.517 * * *.

Minn.Stat. § 473.521, subd. 3 (1980) further provides that:

"To accomplish any duty imposed on it by the council or commission, the governing body of every government unit in the metropolitan area may exercise the powers granted any municipality by chapters 117, 412, 429, 475, sections 115.46, *444.075,* and 471.59." (emphasis added)

The City therefore quite clearly has the authority to pass on to users of municipal sewer facilities M.W.C.C. sewer availability charges paid by the City. The City may recoup these costs by imposing use, availability and/or connection charges authorized by 444.075, by means of special assessments under chapter 429 and § 444.075, subd. 4, or by taxation under Minn.Stat. § 115.46 (1980).

In this case M.W.C.C. imposed a charge of $45,200 against Lakeville under its SAC formula. Lakeville sought to pass this charge on to Crown as part of the connection charge. We agree with the trial court that this procedure is authorized by the applicable Minnesota Statutes, but we do not find our decision in *City of Brooklyn Center v. Metropolitan Council,* 306 Minn. 309, 243 N.W.2d 102 (1975) to be dispositive. In that case this court held that the Metropolitan Waste Control Commission's sewer availability charge fulfilled the statutory directive that *local governmental units* pay the costs for unused metropolitan system capacity in proportion to the amounts of such capacity reserved for each governmental unit. 306 Minn. at 317, 243 N.W.2d at 108. The case did not deal with the issue of how a local governmental unit might pass M.W.C.C. sewer availability charges on to local users of municipal sewer facilities. The Court mentioned the *possibility* that a municipality would choose to do so:

"[S]o far as we can determine, the unit [sewer availability] charge is within the capacity of the actual users to pay, *should the municipality elect to pass on the cost attributed to it by SAC.*"

306 Minn. at 318, 243 N.W.2d at 109 [emphasis added].

■ The question with respect to the SAC portion of the charge imposed upon Crown is whether the statutory scheme allows a municipality to simply turn around and pass the SAC charge on to local sewer users. Minn.Stat. § 473.519 (1978) provides:

"Each local government unit *shall* adopt *a system of charges for the use and availability of the metropolitan disposal system* which will assure that each recipient of waste treatment services within or served by the unit will pay its proportionate share of the current costs allocated to the unit by the commission under section 473.517 * * *." [emphasis added].

Under this provision municipalities such as the City of Lakeville are statutorily required to impose use or availability charges on all recipients of waste treatment services in order to pay the current costs allocated under § 473.517, which include the reserve capacity allocation, or SAC charge, under section 473.517 subdivisions 3 and 4. The SAC portion of the charge imposed upon Crown is a charge for the "availability" of metro waste facilities, and therefore, even if § 444.075, subd. 3 does not authorize the imposition of connection charges to pay SAC allocations, an availability charge is authorized by § 473.519.

2. Having concluded that $45,200 was properly charged to Crown as pass through SAC charges, we must then consider the validity of the remaining charge of $102,215 as a municipal connection charge. Crown argues that the connection charge imposed upon the company in this case was not authorized by the Lakeville City Council. The City Administrator imposed the connection charge pursuant to authority purportedly granted by City Resolution 77–48, entitled "Resolution Establishing Special Assessment Unit and Area Charges." Resolution 77–48 provides, in relevant part:

WHEREAS, the revenue from sewer area, water unit and sewer unit charges are used to retire bonds issued to finance the sewer and water trunk system, and

WHEREAS, the rate structure has not been increased since June 3, 1974, and

WHEREAS, an increase in the area and unit charges are necessary to pursue the financial stability of the trunk fund.

NOW, THEREFORE, BE IT RESOLVED, the following rates shall become effective on the dates as shown on the rate schedule below.

SEWER AND WATER AVAILABILITY RATE SCHEDULE

| | 8/1/77 | 1/1/78 | 1/1/79 | 1/1/80 |
|---|---|---|---|---|
| Sewer area charge | $300/acre | $300/acre | $340/acre | $380/acre |
| Sewer unit charge | $300/unit | $385/unit | $425/unit | $460/unit |
| Water unit charge | $300/unit | $500/unit | $560/unit | $625/unit |

1. The above rates are to be used for any assessments levied, or for any connection permits issued after the above dates for a parcel of property or structure which has not been previously assessed the area or unit charges."

Crown argues the resolution expressly exempts from its operation property which has previously been assessed sewer and water unit charges. It is undisputed that the previous owner of the property paid four connection charges, and that Crown was given credit for these four previous connection charges.

■ The Court is faced with the problem of interpreting paragraph 1 of the resolution, which provides that "[t]he above rates are to be used for any * * * connection permits issued after the above dates for a parcel of property or structure which has not been previously assessed the * * * unit charges." Unfortunately, there are no City Council minutes in the record which reflect upon the intended meaning of paragraph 1 of the resolution. One interpretation of the resolution would be that given it by Crown: the rates set forth in the resolution are not to be charged when a connection permit is issued for property for which a connection charge has previously been paid. If this interpretation is adopted, it would follow that the City Administrator was not authorized by Resolution 77–48 to impose a connection charge upon Crown as connection charges had previously been paid for the property. The problem with Crown's interpretation is that the resolution does not by its language purport to exempt

property for which "a" or "any" connection charge has previously been paid. A more plausible interpretation of the resolution would be that given it by the City: the only property owner exempt from paying the newly enacted sewer and water unit charges upon the issuance of a connection permit would be the owner of property which has "been previously assessed *the * * unit charges*", the words "the unit charges" being a reference by the City Council to the new unit charges scheduled in the resolution. It follows that the City Administrator was authorized to impose a connection charge upon Crown based upon the new schedule of sewer and water unit charges in Resolution 77–48.

Citing to the language of § 444.075, subd. 3, Crown argues that any portion of a connection charge which exceeds the actual cost of making or supervising the connection to the facility may only be "fixed by reference to the portion of the cost thereof which has been paid by assessment of the premises to be connected, in comparison with other premises * * *."

If we interpret the above-quoted portion of § 444.075, subd. 3 as an attempt by the legislature to limit the method of actually calculating connection charges, i.e. that any part of a connection charge exceeding the actual cost of connection *must* be fixed by reference to the portion of the cost of the facility paid by assessment of the premises being connected, then Crown's position is well-taken. The connection charge imposed upon Crown was certainly in excess of the actual cost of supervising the installation of a new 6-inch water line and replacement of an existing 4-inch sewer line with a 6-inch line. The City estimated Crown's daily water use and sewage discharge, translated that use and discharge into "water units" and "sewer units", and then multiplied the number of sewer and water units by "unit charges", $500/water unit, $385/sewer unit.

■ However, we interpret the above-quoted language from § 444.075, subd. 3 as evidencing an effort by the legislature to merely set forth *permissible* methods of calculating connection charges, i.e. connection charges *may* be set by reference to the actual cost of connection as well as by reference to assessments paid by the connecting property, *or*, "in the discretion of the governing body", by any other method, as long as the connection charge is, in the language of the statute, "just and equitable." This interpretation allows local government maximum flexibility in financing municipal sewer and water services and is consistent with the statutory scheme adopted by the legislature.

■ 3. Crown argues that factual issues concerning the reasonableness of the charges, the lack of benefit to the property and the confiscatory nature of the charge remained for trial. The existence of any benefit to Crown's property would only be material if in fact the charge in question was a special assessment imposed pursuant to Minn.Stat. § 444.075, subd. 4. The charge is obviously not a special assessment. Crown's claim that the charge is "unreasonable, arbitrary and capricious" amounts to little more than a conclusory allegation in the complaint. The formula used by the City to calculate the connection charge is not disputed. The cost estimates used by the City in determining the unit charges for sewer and water are also undisputed. Crown does not question the accuracy of its own daily sewer and water use estimated by the City. Crown recites no other disputed issues of fact which bear upon the reasonableness of the connection charge in question. This Court has held a "party cannot preserve his right to a trial on the merits merely by referring to unverified and conclusory allegations in his pleading * * *." *Rosvall v. Provost*, 279 Minn. 119, 124, 155 N.W.2d 900, 904 (1968). *Accord, Erickson v. General United Life Ins. Co.*, 256 N.W.2d 255 (Minn.1977). The record simply does not support Crown's claim that the trial court erred by disposing of this case without trial.

Affirmed.